**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CHARLES FELTNER,**

             **Plaintiff,**

                                      **Case No. 2:12-CV-926**
    **v.**                                 **JUDGE SMITH**
                                        **Magistrate Judge King**

**MIKE'S TRUCKING,** *et al.***,**

             **Defendants.**

**<u>OPINION AND ORDER</u>**

     Plaintiff, Charles Feltner, brings this action *pro se* against Defendants, Mike's Trucking, Ltd. and Mike Culbertson, arising from Defendants' termination of his employment.  Plaintiff alleges (1) age discrimination, (2) disability discrimination, and (3) termination in retaliation for filing a discrimination claim with the Ohio Civil Rights Commission.  This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. 32).  For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**I.    BACKGROUND**

     Mike's Trucking, Ltd. ("Mike's Trucking") is owned and operated by Defendant Mike Culbertson ("Culbertson").  Mike's Trucking performs a variety of trucking services ranging from hauling trash and debris to moving gravel, sand and concrete.

     Given the variety of tasks performed by Mike's Trucking, each driver is assigned to a truck with specific capabilities and is responsible for its upkeep.  Drivers at Mike's Trucking are paid a percentage of their truck's gross earnings. New drivers are paid at a rate of 25%.  Though

it is unclear from the record, it appears that some drivers are later paid on either a per ton or per hour basis, depending on the job.  Defendant Culbertson alleges that, either way, all drivers are paid rates that amount to around $12-$16 per hour.  (Culbertson Aff. at ¶ 5).  Plaintiff responds that while this is consistent with what he was paid, the tonnage rate is "substantially at a higher rate." (Doc. 36, pg. 1).  Thus, according to Plaintiff, some jobs pay "substantially" more than others.  (Pl.'s Dep. at 40).

Plaintiff began working at Mike's Trucking at age 51 and was employed for two periods: (1) from 2005−08 and (2) from 2009−11.  Between his first and second periods at Mike's Trucking, Plaintiff served time in prison.  In his first period with Mike's Trucking, Plaintiff primarily drove a tractor-trailer, however, about "six or eight" months before his first stint ended, he began driving a truck with a "side dump" trailer.  The side dump trailer is used to haul trash or other debris.  The pay for driving a truck with a side dump trailer varied from job to job, with some jobs paying at a percentage rate and others paying per hour.

Shortly after he returned to Mike's Trucking in 2009, Plaintiff was again assigned to jobs requiring him to drive a truck with a side dump trailer.  Defendant Culbertson explains that the assignment was based on two reasons: (1) the truck he was assigned was the only operable truck in the fleet capable of towing the side dump trailer, and (2) Plaintiff was the only driver who was trained to haul it.  (Culbertson Aff. at ¶ 4).  Plaintiff, however, contends that this is not true.  At his deposition, he testified that "any truck could haul any trailer" because "they all hooked up the same way."  (Pl.'s Dep. at 39).  Further, Plaintiff contends he was not the only trained driver because another driver, Brent Davis, also hauled the side dump trailer.  (Doc. 36, pg. 1).[1]

---

[1] Plaintiff contends that dispatch logs, attached to his memorandum in opposition, establish his contentions.  The log, however, does not appear to contain any mention of a side dump trailer, nor does the Plaintiff attempt to help the Court decipher it.

It is undisputed that after his return to Mike's Trucking in 2009 the relationship between Plaintiff and Defendants began to sour. Plaintiff alleges that on multiple occasions he was asked to perform work that would violate the law or was contrary to restrictions put in place by his doctor. This included being asked to: (1) work more hours than allowed under federal law; (2) haul hazardous materials without proper certification; (3) lift greater than 50 pounds; and (4) drive a truck, without air conditioning, in temperatures greater than 90-degrees Fahrenheit. For the last two claims, Plaintiff provided the Defendants with doctor's notes excusing him from those activities.[2] The restriction on lifting stems from Plaintiff's back problems which required surgery years before he began his employment at Mike's Trucking. Plaintiff asserts that he is heat sensitive but he does not identify a medical condition that is the basis of his heat sensitivity. Plaintiff admits, however, that he was not forced to perform these tasks and was not punished for refusing.

Plaintiff's primary complaint while working at Mike's Trucking was being asked to haul the side dump trailer. Shortly after he was assigned the side dump trailer, he began to complain to dispatcher Ron Green because he felt that being assigned the side dump trailer caused him to earn less than other, less senior, drivers. The complaints continued for a year and a half, until June of 2011, when Plaintiff finally announced that he refused to haul the side dump trailer. Based on this refusal, Plaintiff was informed by Mr. Green that he was suspended for three days.

On the last day of his suspension, June 24, 2011, Plaintiff alleges that he was called into Defendant Culbertson's office in order to collect his pay check. (Pl. Dep. at 59). During that meeting, Plaintiff claims that Culbertson told him that if he refused any job assignment

---

[2] There were two doctor's notes on file. The first, dated April 16, 2010, exempted Plaintiff from "lifting, pushing or pulling" greater than 50 pounds. The second, dated July 2, 2011, exempted him from being exposed to temperatures in excess of 90 degrees. A cumulative report, completed by Plaintiff's doctor after his termination, was referred to in Plaintiff's deposition as a "third" doctor's note.

whatsoever, he was going to be fired.  (*Id*.)  When Plaintiff brought up the doctor's note that he

had on file, Culbertson allegedly told Plaintiff that he "didn't care." (*Id*.).  According to Plaintiff,

he then told Culbertson that he was going to file a claim with the Ohio Civil Rights Commission.

(*Id*.).  Defendant Culbertson does not mention this exchange in his affidavit or motion for

summary judgment.

On July 5, 2011, Plaintiff filed a charge with the Ohio Civil Rights Commission for age

and disability discrimination.  On July 6, 2011, Plaintiff's employment at Mike's Trucking was

terminated.   Plaintiff alleges that, at the time of his termination, he was told by supervisor Dale

Collins that his termination was because of all of the "fussing back and forth." (*Id*. at 49−50).

Defendant Culbertson, who has the final say on all terminations, alleges that the decision to

terminate Plaintiff's employment was based on two grounds: (1) continued insubordination and

(2) an alleged threat of violence made by the Plaintiff to Ron Green.  (Culbertson Aff. at ¶¶ 5, 7).

Defendant Culbertson does not explain in any detail the insubordination that lead to Plaintiff's

termination.  Culbertson further states that he was not aware of any charge with the Ohio Civil

Rights Commission at the time that he fired Plaintiff.

Plaintiff challenges the reasons given by Culbertson for his termination.  First, he

challenges the insubordination claim, citing Culbertson's testimony, under oath, in an

unemployment claim hearing.  At the hearing, Culbertson and other employees at Mike's

Trucking gave what Plaintiff alleges is inconsistent testimony as to why he was terminated.[3]  For

example, the first witness,[4] Office Assistant Tina Haynes, testified that Plaintiff was fired

because he refused an assignment to haul the side dump trailer the following morning (July 7,

---

[3] Plaintiff filed CDs containing the audio of the hearings with the Court in his Response in Opposition.  (Doc. 36,
Exhibits A & B).
[4] The hearing was conducted in two sittings.  The first featured testimony of Office Assistant Tina Haynes and the
Plaintiff.  The second featured testimony of Plaintiff and Defendant Culbertson.

2011).  Defendant Culbertson, on the other hand, testified at the hearing that another supervisor, Dale Collins, made the decision to terminate Plaintiff, and that everyone in the office collectively agreed.  Culbertson's testimony did not detail any insubordination that prompted termination. Instead, the "main reason," according to Culbertson's testimony, was that Plaintiff threatened Dispatcher Ron Green with violence.  Plaintiff denies threatening anyone at Mike's Trucking with violence.  (Pl.'s Dep. at 88−89).

Plaintiff believes that the true reason for his termination was retaliation for filing a charge of discrimination with the Ohio Civil Rights Commission. Accordingly, Plaintiff challenges Defendant Culbertson's assertion that he was unaware of the charge of discrimination. While Plaintiff does not have any actual knowledge that Culbertson was aware that he filed the charge, three factors inform his claim: (1) The temporal proximity between filing and firing; (2) that he made Culbertson aware that he intended to file a charge during their June 24th, 2011 conversation; and (3) that a worker at the Ohio Civil Rights Commission had allegedly called the office at Mike's Trucking to inform them that a claim had been filed.  (*Id*. at 73).  Plaintiff admits, however, that the worker did not make the call in his presence and that he was told that Culbertson was not in when the call was made.  (*Id*. at 73−74).

Plaintiff initiated this action in October 2012.  The Court, now presented with Defendants' Motion for Summary Judgment, must determine whether a genuine issue of material fact exists with regard to any of Plaintiff's claims.

## II.    STANDARD OF REVIEW

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party.  *Matsushita*, 475 U.S. at 587.  The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53.  Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.  *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978).  The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present

affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479−80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.    ANALYSIS

Plaintiff asserts three claims against the Defendants: (1) age discrimination; (2) disability discrimination; and (3) termination in retaliation for filing a charge of discrimination with the Ohio Civil Rights Commission. These claims will be addressed in turn.

### A.    Age Discrimination Claim

Plaintiff alleges that Mike's Trucking discriminated against him due to his age when it required him to haul the side dump trailer while other, less senior, drivers were assigned more lucrative jobs. Plaintiff does not allege that he was terminated because of his age. While

Plaintiff does not specify whether he brings this claim under state or federal law, it is noted that Ohio age discrimination claims are "analyzed under the same standards as federal claims brought under the Age Discrimination in Employment Act" (or "ADEA").[5]  *Wharton v. Gorman–Rupp Co.*, 309 Fed.Appx. 990, 995 (6th Cir. 2009) (citing *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005)).  Therefore, the Court will apply the Sixth Circuit's ADEA jurisprudence to determine whether the Plaintiff has suffered age discrimination.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).  The ADEA forbids employers from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623. Plaintiffs can establish a claim under the ADEA in two ways: first, by presenting direct evidence of discrimination or, second, by establishing a *prima facie* case of age discrimination under the *McDonnell Douglas* burden-shifting analysis.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  Direct evidence is that evidence which, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).  Plaintiff has not presented any direct evidence of age discrimination; therefore the *McDonnell Douglas* burden shifting analysis is appropriate.

The *McDonnell Douglas* analysis requires the plaintiff to first establish a *prima facie* case of discrimination.  If the plaintiff is able to do so, burden of production shifts to the defendant to

---

[5] In Plaintiff's complaint, under "Subject Matter Jurisdiction" he wrote that jurisdiction was proper under "Title VII."  However, under "section" he cites "4112.01" and "4141.01" which are both provisions governing employment under Ohio law.

"articulate a non-discriminatory reason for its action." *Burzinsky v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001) (citing *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998)). Once a non-discriminatory reason has been articulated, the burden of production shifts back to the plaintiff to show that the submitted reason was pretext for discrimination on the basis of age. *Id*. In accordance with the summary judgment standard, the Court will determine if sufficient evidence exists to present a genuine issue of material fact with regard to this claim.

### 1. *Prima Facie* **Case**

In order to establish a *prima facie* case of age discrimination a plaintiff must demonstrate: (1) membership in a protected class (i.e., over 40 years old); (2) qualification for the job; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *Swierkiewicz*, 534 U.S. at 506; *see also Rowan v. Lockheed Martin Energy Systems,* 360 F.3d 544, 547 (6th Cir. 2004). The first two prongs are undisputed in this case. However, because Plaintiff cannot produce sufficient evidence to show: (1) that requiring him to drive a truck equipped with a side dump trailer constituted an "adverse employment action" or (2) that the circumstances support an inference of discrimination, he cannot meet the third or fourth prongs, and, therefore, cannot establish a *prima facie* case.

### a. **Adverse Employment Action**

Plaintiff has not established that driving a truck with a side dump trailer constitutes an adverse employment action. An "adverse employment action" is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996). In order for a change to be "materially adverse" it "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 886 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136

(7th Cir. 1993)).  A "bruised ego" is insufficient to constitute an adverse employment action. *White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789, 797 (6th Cir. 2004) (en banc) (quoting *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996)).  Instead, a materially adverse change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Hollins v. Atlantic Co.,* 188 F.3d 652 (6th Cir. 1999) (quoting *Crady*, 993 F.2d at 136).

Plaintiff argues that being required to haul the side dump trailer constitutes an adverse employment action because it resulted in less pay.  However, Plaintiff does not provide any evidence to establish that he was, in fact, paid less than other drivers, or even less than he was paid before he hauled the side dump trailer.  While Plaintiff points to time sheets, dispatch logs, affidavits of coworkers, and his own testimony in an attempt to establish the "materially adverse" nature of hauling the side dump trailer, none of the cited evidence supports the inference that assignment to the side dump trailer resulted in less pay.  For example, Plaintiff asserts that the dispatch logs show that he was assigned the side dump trailer and others were not.  This has no practical effect because it merely confirms what has already been established. The time sheets show the rate that Plaintiff was paid and reflects a rate of $14-$16 an hour. While more relevant than the dispatch logs, these sheets do not show any decrease in pay or that Plaintiff was paid less than other drivers. Finally, the affidavits and testimony do no more than conclusively state that other jobs were "better paying," without any further elaboration or basis for that statement.  Therefore, Plaintiff has not shown that his assignment to the side dump trailer was an adverse employment action.

### b.        Inference of Discrimination

Further, the factual circumstances of this case do not support an inference of age discrimination.  Plaintiff claims that age discrimination can be deduced from being forced to haul the side dump trailer where other, less senior, drivers were assigned other trailers.  In cases where disparate treatment is alleged, a Plaintiff can support an inference of discrimination "by showing that similarly situated non-protected employees were treated more favorably." *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516, 522 (6th Cir. 2008) (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 318 (6th Cir. 2007)).  To make such a showing, the Plaintiff must demonstrate that the other employees compared were: (1) similarly situated; (2) non-protected; and (3) treated more favorably.  There does not appear to be any debate as to whether the other drivers were "similarly situated," however Plaintiff has provided no evidence to show that other drivers were non-protected or were treated more favorably.

First, Plaintiff does not provide any evidence that shows that the other drivers who were not assigned the side dump trailer were non-protected.  Plaintiff focuses on the fact that "less senior" drivers were being assigned trailers other than the side dump trailer.  In a case such as this one, however, it is not seniority that is at issue, but the age of the drivers.  The evidence presented by Plaintiff, however, does not establish a connection between seniority and age. That is, Plaintiff fails to detail the ages of similarly situated drivers who were allegedly being assigned these "better" jobs.  In Plaintiff's first year at Mike's Trucking, he was 51 years old, and thus "newer" or "less senior" does not mean "younger" as contemplated by the ADEA.

Second, as discussed above, there is no evidence that hauling the side dump trailer constituted an "adverse employment action," or in reverse, that not hauling it was "favorable

treatment." Therefore, Plaintiff cannot support a claim that he was discriminated against because of his age.

2.  <strong>Non-discriminatory Reason for Termination</strong>

Even if Plaintiff was able to establish a *prima facie* case of age discrimination, his age discrimination claim cannot survive the *McDonnell Douglas* burden-shifting analysis. Under *McDonnell Douglas*, after a *prima facie* case has been established, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action in question. The defendant's burden is only one of production; therefore, the defendant is merely required to rebut the *prima facie* allegations made by the plaintiff, not persuade the Court that those reasons actually motivated its decision. *Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254−55 (1981). Here, Defendant Culbertson explains that Plaintiff was given the side dump trailer assignment because: (1) Plaintiff was the only one trained to drive it, and (2) that Plaintiff's truck was the only truck capable of hauling it. Because Defendant has articulated nondiscriminatory reasons, the burden shifts to back to Plaintiff to show that the reasons proffered by Defendants constitute pretext.

3.  <strong>Pretext</strong>

In order to show pretext, the plaintiff is required to show by a preponderance of the evidence that the proffered reason: (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) were insufficient to motivate the employment action. *Burdine*, 450 U.S. at 253.

Plaintiff, without pointing to any evidence, argues that the proffered reasons had no basis in fact. First, he responds that another driver had hauled the side dump trailer, and thus he could not have been the only trained driver. In order to show this, Plaintiff submits a dispatch log that

12

he claims shows that another driver, Brent Davis, had driven a truck with the side dump trailer. However, the dispatch logs make no perceivable reference to what trailer any of the drivers are assigned and Plaintiff does not clarify where such information would be located. With regard to Defendant's second reason, he responds that all trucks could haul the side dump trailer because they "all hook up the same way." However, Plaintiff does not point to any evidence to support that statement.  Therefore, because Plaintiff does not establish that Defendant Culbertson's proffered reasons constitute pretext, Defendants are entitled to summary judgment on Plaintiff's claim of age discrimination**.**

### B.     Disability Discrimination Claim

Plaintiff claims that he was subjected to disability discrimination while employed with Mike's Trucking because they failed to accommodate his alleged disabilities.  Plaintiff suffers from back problems and sensitivity to heat.  He rests his claim on being asked to drive, without air conditioning, in temperatures above 90 degrees and to lift more than 50 pounds.  Plaintiff, again, does not specify whether he brings this claim under state or federal law.  However, similar to the ADEA, Ohio law governing disability discrimination parallels federal law.  *Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206-07 (1998) (explaining that Ohio courts can permissibly look to federal case law and regulations in interpreting Ohio law).[6]  Therefore, the Court may properly analyze Plaintiff's claim under the ADA Amendments Act of 2008 ("ADAAA").

The ADAAA establishes that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job

---

[6] The Ohio Supreme Court has not considered the issue of whether Ohio courts should apply the broader standard defining "disability" dictated by the ADA Amendments Act of 2008 ("ADAAA").  However, the Ohio 10th District Court of Appeals has, in two separate instances, acknowledged that for instances of discrimination after January 1, 2009, it would apply the ADAAA.  *See Canady v. Rekau & Rekau, Inc.*, No. 09AP-32, 2009 WL 3021764, at *8 (Ohio Ct. App. Sept. 22, 2009); *Camp v. Star Leasing Co.*, No. 11AP-977, 2012 WL 3291798, at *10 n.4 (Ohio Ct. App. Aug. 14, 2012).

application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a).  The Act elaborates that "discriminat[ing] against a qualified individual with a disability" includes, "not making reasonable accommodations to the known physical…limitations of an otherwise qualified individual with a disability who is an…employee…." 42 U.S.C.A. § 12112(b)(5)(A).

In order to establish a *prima facie* case of disability discrimination under a "failure to accommodate" theory, the plaintiff must show: (1) he is disabled within the meaning of the Act; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 Fed.Appx. 974, 982–83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)).  Defendant argues that Plaintiff cannot establish a *prima facie* case because (1) Plaintiff is not "disabled" within the meaning of the law, (2) Plaintiff did not request accommodation, and (3) Defendants did accommodate any health issues that Plaintiff presented.

### 1.    Disability

Citing pre-ADAAA case law, Defendant argues that Plaintiff's physical impairments do not qualify as a "disability" within the meaning of the law.  However, Congress amended the ADA in 2008 in response to a perception that courts were not applying the ADA broadly enough. Central to the passage of the ADAAA was Congress's rejection of ADA case law that had interpreted the definition of "disability" narrowly.  Pub.L. No. 110-325, 122 Stat. 3553 § 2(b) (2008).  Accordingly, the ADAAA now stipulates that the term "disability" should be construed

"in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by terms of this chapter."  42 U.S.C. § 12102(4)(A).

Under the ADAAA, a person is "disabled" where that individual has a "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).  While Plaintiff's sensitivity to heat does not meet the definition, it is much less clear with regard to his back impairment.  Plaintiff's sensitivity to heat does not create a genuine issue of material fact as to whether it constitutes a disability.  To begin with, Plaintiff fails to include sufficient evidence of this sensitivity to make this determination.  Plaintiff does not point to any specifics with regard to the impairment—only that he is sensitive to heat.  His discussion of this impairment is limited to a single incident when he fainted and was sent to the Ohio State University Medical Center.  However, according to Plaintiff, the doctors stated that they could not find anything wrong with him besides the fact that he was dehydrated.  (Pl.'s Dep. at 58).  This is insufficient to show that he is disabled because of heat sensitivity.  Accordingly, in examining the remaining elements of Plaintiff's disability claim, the Court will only consider Plaintiff's back impairment.

Plaintiff's back problem is much less clear.  The question required under the ADAAA is whether Plaintiff's back problem "substantially limits" any major life activities—particularly lifting—where it prevents Plaintiff from lifting over 50 pounds.  This limitation would not be considered to be "substantial" under pre-ADAAA case law.  *See*, *e.g.*, *Law v. City of Scottsville*, 221 F.3d 1335, *4 (6th Cir. 2000) (finding that weight restrictions do not constitute a disability under the ADA).  Given the apparent liberalization of the ADAAA, however, this proposition has come into question and some courts have recognized restrictions as qualifying.  *See*, *e.g.*, *Tate v. Sam's E.*, Inc., 3:11-CV-87, 2013 WL 1320634 (E.D. Tenn. Mar. 29, 2013) (discussing

15

emerging decisions on weight restrictions as they pertain to disabilities and finding a genuine issue of material fact with regard to a lifting restriction of no more than 20 to 25 pounds).  Here, while Plaintiff's restriction of fifty pounds is higher than most cases, the question remains as to whether it meets the new standard of the ADAAA. However, because Plaintiff has been accommodated, it is unnecessary to reach this question and the Court will not attempt to navigate this uncharted area of the law.

### 2.    Accommodation

Defendants argue that (1) Plaintiff failed to request an accommodation, and (2) even if Plaintiff did request an accommodation, they accommodated him by not requiring him to lift over 50 pounds.  While Plaintiff can show that he requested an accommodation, he cannot show that he was not accommodated.

First, the Court will consider whether Plaintiff requested an accommodation.  In arguing that an accommodation was not requested, Defendants present a standard that is much higher than what has been required.  Neither the statute nor case law establishes a specific process that must be undertaken to meet this requirement.  *See*, *e.g.*, *Schmidt v. Safeway Inc.,* 864 F. Supp. 991, 997 (D. Or. 1994) (the "statute does not require the plaintiff to speak any magic words…. The employee need not mention the ADA or even the term 'accommodation.'"). Here, Plaintiff can show that he requested an accommodation in April of 2010 when he provided a note from his doctor excusing him from lifting over 50 pounds.

Defendants next argue that even if an accommodation was requested, they accommodated Plaintiff by never requiring him to lift over 50 pounds in compliance with the Doctor's note.  The ADAAA requires that employers provide "reasonable accommodation" to otherwise qualified employees with a disability unless the employer can show that the accommodation would cause

an undue hardship on the operation of business.  42 U.S.C. § 12112(b)(5)(A).  The regulations elaborate that "reasonable accommodation," in a circumstance such as this, means that an employer is required to provide "[m]odifications or adjustments…to the manner or circumstances under which the position held…is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

In this case, Plaintiff alleges that he was not accommodated because he was asked to lift over 50 pounds.  Despite this allegation, Plaintiff cannot show that he was not accommodated.  First, Plaintiff testified that his back impairment and 50-pound limitation did not affect his ability to drive a truck with the side dump trailer, although he was occasionally asked to do some lifting throughout the course of his employment.  (Pl.'s Dep. at 70).  However, Plaintiff admits that Defendants never required him to do so after he provided his doctor's note.  Further, he was never punished for refusing.  Accordingly, because Defendants accommodated his request by never requiring him to lift over 50 pounds, Plaintiff cannot establish a genuine issue of material fact as to his disability discrimination claim and thus summary judgment is proper.

### C.    Retaliation Claim

Finally, Plaintiff claims that Mike's Trucking terminated his employment in retaliation for filing two charges of discrimination with the Ohio Civil Rights Commission.  This claim is based primarily on the fact that Plaintiff was fired within 24 hours of filing the claim.  Much like the two claims above, Ohio law mirrors federal law in establishing a claim for retaliation.  *See Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (2007) (citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)).  Therefore, the Court will again apply federal law in analyzing the retaliation claim.

The ADEA and ADAAA prohibit retaliation for making a charge of discrimination.  *See* 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a).  Retaliation claims are treated the same whether brought under the ADA or Title VII. *Penny v. United Parcel Serv*. 128 F.3d 408, 417 (6th Cir. 1996) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997)).  Similar to a claim of age discrimination under the ADEA, the *McDonnell Douglas* burden-shifting applies to claims of retaliation.  *Blizzard v. Marion Technical Coll*., 698 F.3d 275, 288 (6th Cir. 2012).  To establish a *prima facie* case of retaliation a plaintiff must establish that: (1) he or she engaged in a protected activity; (2) the defendant had knowledge that the plaintiff had engaged in that activity; (3) the defendant took an adverse employment action against the employee; and (4) there is a causal connection between the protected activity and the adverse action.  *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 544 (6th Cir. 2008).  Here, Defendants argue that Plaintiff cannot establish two prongs: (1) that Defendant Culbertson had knowledge that Plaintiff had filed a charge of discrimination, and (2) that there was a causal connection between the filing of the charge of discrimination and Plaintiff's termination.  As will be explained, Plaintiff has not provided sufficient evidence to support a *prima facie* case of retaliation, and therefore, this claim cannot survive summary judgment.  Further, even if Plaintiff could meet the requirements for a *prima facie* case of retaliation, he does not provide sufficient evidence to establish pretext under the *McDonnell Douglas* burden-shifting analysis.

### 1.    *Prima Facie* Case

Defendants claim that Plaintiff cannot establish that Defendant Culbertson had knowledge that a charge of discrimination had been filed or that there was a causal connection between the filing of the charge and his termination.  Plaintiff, on the other hand, relies primarily on two facts to contradict these assertions: (1) that a phone call was allegedly made by an OCRC

representative to the office at Mike's Trucking, and (2) that he was fired the day after he filed his

charges.  Plaintiff also mentions that he made Defendant Culbertson aware of his intention to

possibly file a charge of discrimination during a conversation on June 24, 2011; however, he

does not argue that this incident establishes Culbertson's knowledge.

　　　In order to retaliate against an employee who has engaged in a protective activity, it is

necessary that the employer have knowledge of the protected activity in the first place.

Knowledge that an employee has engaged in a protected activity may be inferred from evidence

in the record. *See*, *e.g.*, *Proffitt v. Metro. Gov't of Nashville & Davidson County*, 150 F. App'x

439, 442-43 (6th Cir. 2005) (explaining that direct evidence of knowledge is not required, and

that a plaintiff "may survive summary judgment by producing circumstantial evidence to

establish this element of [his or] her claim").  In accordance with Rule 56, however, it is "well

established" that in ruling on a motion for summary judgment the Court may only consider

admissible evidence.  *Wiley v. U.S.*, 20 F.3d 222 (6th Cir. 1994).

　　　Here, Plaintiff primarily relies on a statement allegedly made by a representative of the

OCRC that indicated that a phone call had been placed to Mike's Trucking regarding his claim.

However, this evidence fails to establish knowledge.  First, the Court cannot consider evidence

of the alleged phone call because it constitutes inadmissible hearsay.   *See* Fed. R. Evid. 801(c).

Plaintiff testified in his deposition that he did not see the representative make the phone call,

only that the worker told him that he did.  Therefore, Plaintiff is attempting to use this out of

court statement, unsupported by personal knowledge, for the truth of the matter asserted; that is,

that the worker actually made the call or spoke to a representative at Mike's Trucking.

　　　Second, even if this statement was not hearsay, it still would be insufficient to establish

knowledge of the protected activity for the purposes of retaliation because Plaintiff would be

unable to show anything beyond the fact that a phone call was allegedly placed.  Plaintiff does not provide any indication as to the purpose of the call.  Accordingly, Plaintiff does not know what the worker told the unnamed representative from Mike's Trucking.  Plaintiff cannot provide any evidence as to whether any discrimination charges were discussed.  Finally, even if Plaintiff had seen him make the call, he testified that the worker told him that Culbertson was not in.  Considering all of these facts, this statement cannot establish that Defendants had knowledge that he filed a charge of discrimination via a call from the OCRC.

Beyond the phone call, Plaintiff claims that the timing of his termination shows that Defendants had knowledge of the protected activity.  Because the phone call is inadmissible, the Court is left to consider whether the timing between the filing of the charge and Plaintiff's termination is, in and of itself, sufficient to infer knowledge.  The timing of an adverse employment action, through the temporal proximity, can be used to support a *prima facie* case, however, the Sixth Circuit has almost uniformly applied this standard under the causation prong.  *See*, *e.g.*, *Imwalle*, 515 F.3d at 550 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)).  Accordingly, the temporal proximity analysis in the Sixth Circuit requires the employer's *knowledge* and the adverse employment action to be close in time, not the protected activity.  Thus, an independent showing of knowledge is required.  *See id*.  While the timing between the protected activity and the discharge is very close, this closeness is insufficient absent other evidence to establish that Culberston was aware of the charge.  While one may speculate that Culbertson was aware of the charge prior to making the termination decision, speculation is not sufficient to create a genuine issue of material fact as to whether he was aware.

**2.       Reason for Termination and Pretext**

Even if Plaintiff would be able to support a *prima facie* case of retaliation, he does not present enough evidence to create a genuine issue as to whether Defendants' legitimate, nondiscriminatory reason for termination constituted pretext.  As discussed above in reference to the age discrimination claim, Defendants have presented a legitimate, nondiscriminatory reason for terminating Plaintiff's employment: (1) continued insubordination and (2) threatening to beat up a dispatcher, Ron Green.  Plaintiff appears to argue either that these reasons have no basis in fact or that they did not motive his termination.  However, Plaintiff does not present enough evidence to support either argument.

As discussed above, a plaintiff can establish that a defendant's proffered legitimate, nondiscriminatory reason for discharge constitutes pretext by showing that it: (1) lacks a basis in fact, (2) did not actually motivate the termination, or (3) was insufficient to motivate the termination.  *Vincent v. Brewer Co.*, 514 F.3d 489, 497 (6th Cir. 2007) (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 319 (6th Cir. 2007)).  Plaintiff's primary evidence to support pretext is allegedly inconsistent testimony[7] by Defendant Culbertson and other office staff in an unemployment review commission hearing.  However, this testimony does not establish pretext.

First, Plaintiff argues that the claim that he was terminated for insubordination could not be true because he was told that he was fired for "fussing back and forth."  (Pl.'s Dep. at 59).  However, this statement could just as easily, if not more convincingly, be interpreted as implying that "fussing back and forth" meant refusing to drive the truck with the side dump trailer.

Next, while Plaintiff claims that Ms. Haynes and Defendant Culbertson gave inconsistent testimony, the testimony does not appear to actually be contradictory.  Ms. Haynes testified that Defendant Culbertson terminated Plaintiff for refusing to drive the truck with the side dump

---

[7] Unlike the statements regarding the telephone conversation, this testimony does not present a hearsay issue because it falls under the party-opponent exception to hearsay under Rule 801(d)(2).  Fed. R. Evid. 801(d)(2).

trailer on July 7th.  Mr. Culbertson testified that Plaintiff was terminated for threatening to beat up a dispatcher, Ron Green, and for insubordination.  He further testified that another supervisor, Dale Collins, suggested terminating Plaintiff and that all of the supervisors agreed.   Defendant Culbertson, as the owner of the company, made the final termination decision.  While perhaps the testimony is unclear, it does not present a genuine issue of material fact as to whether Defendants' legitimate, nondiscriminatory reasons constituted pretext.

Therefore, because Plaintiff cannot establish either a *prima facie* case of retaliation or pretext, Defendants are entitled to summary judgment on this claim.

## IV.    DISPOSITION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 32).

The Clerk shall remove Document 32 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**